**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**HUGH Q. RILEY,**

Plaintiff,

v.

**FCA US LLC,**

Defendant.

CASE NO. 3:24 CV 958

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Currently pending before the Court in this employment discrimination case is Defendant FCA US LLC's Motion for Summary Judgment. (Doc. 22). Plaintiff Hugh Q. Riley opposes (Doc. 24) and Defendant replies (Doc. 26). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. For the reasons set forth below, the Court grants Defendant's Motion.

## BACKGROUND

Plaintiff began working for Defendant as a millwright in the Toledo Assembly Complex in October 2016; he is still employed with Defendant. (Plaintiff Depo., Doc. 18-1, at 20, 30, 33).[1] Plaintiff is African American and is currently 66 years old. *See id.* at 11; (Doc. 1, at 3). He has an Associate's Degree from Owen's Community College and a Bachelor's Degree in Business from the University of Toledo. (Doc. 18-1, at 18-19). He also completed a millwright apprenticeship program from which he obtained a certificate. *Id.* at 19.

1. The Court cites to the internal pagination within the deposition, which matches the ECF pagination. The Court cites to the ECF pagination for the exhibits attached to Plaintiff's deposition.

*Hiring Process / Early Employment*

Prior to his employment with Defendant, Plaintiff filled out and electronically signed an application for employment; he then physically signed it when he started work. *Id.* at 29-30, 183-91 (employment application). The application contained the following provision: "In consideration of the review of [Plaintiff's] application":

> I agree that any lawsuit arising out of my employment with, or my application for employment with, FCA US LLC or any of its subsidiaries and affiliates must be filed no more than 180 days after the date of the employment action that is the subject of the lawsuit. While I understand that the statute of limitations for claims arising out of an employment longer may be longer than 180 days, I agree to be bound by the 180 day period of limitations and **I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.**

*Id.* at 187.

Plaintiff worked in the body shop, the paint shop, and then in "JT Assembly." *Id.* at 33-36. In JT Assembly, he worked as a millwright. *Id*. at 36.

*Facility Engineer Position*

Defendant has two types of engineers: process engineers and facility engineers. Per Plaintiff, process engineers "go[] out and service[e] equipment" on the floor; facility engineers "order[] parts and correspond[] with vendors." *Id.* at 41.

Since his hire, Plaintiff had been interested in an engineering position. *Id.* at 37. In December 2021, Plaintiff's union steward contacted him to set up an interview for such a position. *Id.* at 38-39.[2] Plaintiff was hired into a facility engineer position he applied for in April 2022 in the JT paint department; he started with a 120-day probationary period. *Id.* at 42, 99-100. Plaintiff replaced an employee who had been a facility engineer for approximately 23 years. *Id.* at 58.

---

2. Plaintiff had previously interviewed for such a position but was not selected. *Id.* at 39-40.

At his deposition, Plaintiff was asked about familiarity or knowledge regarding various items contained in the facility engineer job description. *Id.* at 47-51; *see also id.* at 195-98 (Plant Facilities Engineer Responsibilities). He testified he had understanding or knowledge of some of the items listed, but not others. *See id.* at 48-51.

Plaintiff's direct supervisor was Randall Staley, a manager. *Id.* at 45. Staley started in the paint department just before Plaintiff and, to Plaintiff's knowledge, had not previously supervised any facility engineers. *Id.* at 149. Although Plaintiff initially got along with Staley, the relationship quickly "went south." *Id.* at 52-53. Plaintiff described Staley being rude, sarcastic, and disrespectful. When Plaintiff would ask a question, he "would just get sarcasm" in response from Staley. *Id.* at 53. He indicated he would ask a simple question and Staley would respond, "Well, you got a degree. You should know that." *Id.* Other times, he would "get brushed off." *Id.* at 54; *see also id.* at 78 ("I would ask a question, [and Staley] would roll his eyes at me and start talking to someone else in the middle of me asking the question."). Staley never made any comments to Plaintiff about his race or age. *Id.* at 55. Nor did he ever insult him otherwise, make disparaging comments, or call him names. *Id.* at 78-79. Plaintiff testified he was not given any training for the position, that Staley was generally unhelpful, and that he had to seek out others for help with tasks. *See id.* at 57-67, 141, 148-49.

Plaintiff expected that, because he was entering a new position, "there would be someone to assist and guide [him] and show [him] . . . the general duties" of the position and there would be more of an onboarding process. *Id.* at 62, 70. He further testified that he never made any particular training request that was denied. *Id.* at 62, 70, 88.

After Plaintiff was hired as a facility engineer, Defendant hired Jason Goetz as a temporary facility engineer in the body shop. *Id.* at 63. Goetz received on-the-job training from the then-current facility engineer of the body shop. *Id.*

In July 2022, Plaintiff had a meeting with Staley and others (including Union representatives) about his job performance. *Id.* at 95-96; *see also id.* at 213 (email from Plaintiff to Staley and others regarding the meeting). Plaintiff's probationary period was ultimately extended for an additional 60 days, but at the end of that period, Defendant decided to move Plaintiff to a different department. *Id.* at 99-103. Plaintiff believed this decision was based on his race or age. *Id.* at 80, 82, 104. He testified that this was based on "gut feel" because he was the only person of color working in his department, and because he was older. *Id.* at 80-82. No specific race or age-based comments were made. *Id.* at 82.

*Process Engineer Position*

In October 2022, Plaintiff started work in a process engineer position in the assembly department. *Id.* at 105-06, 109-10. This was a "float" position, meaning Plaintiff filled in when others were absent; Plaintiff was also in a probationary status in this role. *Id.* at 106-07. Plaintiff's supervisor was Jeff DeVries; he got along with DeVries. *Id.* at 111, 114. DeVries was responsive to his questions, and never made any comments about his race or age. *Id.* DeVries was, however, "never around" and assigned Plaintiff to work with Jeff Dorobek, the lead process engineer in the assembly department. *Id.* at 115. Dorobek was responsive to Plaintiff's questions, but their relationship "was so-so." *Id.* Plaintiff described Dorobek as "very difficult to get along and work with" and described others having similar problems with him. *Id.* at 116. When Plaintiff asked questions, he described Dorobek as "being short" with him in response. *Id.* at 118.

When asked whether he received feedback on his performance, Plaintiff said both DeVries and Dorobek told him he "was doing fine" and never provided him any instructions on how to make changes or improve his performance. *Id.* at 116-17.

Plaintiff testified his working environment caused emotional distress, for which he sought counseling. *Id.* at 117. He took a leave of absence in February 1, 2023 based on this emotional distress, which he stated was based on how he was treated at work:

> Q: What led you to seek counseling for emotional distress?
>
> A: The continuation from working in facility engineering and going over to process [engineering] and feeling the same treatment somewhat. And I would just stress.
>
> Q: Now, you've just testified, however, that you did not feel that you were denied training - - so what do you feel was a continuation of the treatment?
>
> A: Just the stress from working; like I say, it was there in that department process that they - - I did work with someone, but it still was stressful - - I don't mean it was stressful, as far as working with someone, still just the way they - - I was received.
>
> Q: What do you mean by the way that you were received?
>
> A: I received training, but when I asked something, it was just very short, you know, communication was very short, you know, so, I mean, it was there where I say, maybe, rode with someone on a cart, and we go out and they say, okay, this is how we go about doing the job duties. But the hardest thing, it was short. You know, someone being short. When you ask something, they're just being short and that's what I mean by continuation. I was feeling the same. I felt the same type of treatment, trained in the same atmosphere, but at least they were providing some assistance.
>
> Q: Okay. Now you've identified that you felt this difficult relationship with Jeff Dorobek. Was there anyone else that was short with you?
>
> A: No. I guess, No.

*Id.* at 117-19; *see also id.* at 214 (Plaintiff's employment history).

Plaintiff's physician provided him a note to substantiate his leave of absence until March 8, 2023. *Id.* at 119-20. He returned to work on March 8, but went back on leave on March 10, 2023. *Id.* at 120-22. When asked why he went back on leave, he said: "Couldn't take it. It was just still stressful. I just couldn't. I'm still under distress. It just. I was just stressed." *Id.* at 122. Nothing specific happened between March 8 and March 10 to cause him to leave again, but it was "just accumulation of . . . being in the facility, being there and the conditions" and it was "just very stressful." *Id.* When asked what conditions he was referring to, Plaintiff responded: "just the condition, the atmosphere, you know, the anxiety and everything else that I was experiencing." *Id.* This second leave of absence lasted until April 14, 2023. *Id.* at 128; *see also id.* at 214.

After Plaintiff returned, DeVries sent Plaintiff an email listing "Pros" and "Concerns" regarding Plaintiff's performance in process engineering:

During the First 3 months I have the following observations:

**Pros**

1. You ask questions on tasks you struggle with
2. Show up on time (6 minutes prior to shift start)
3. Respectful to Myself
4. Conduct tasks that I request

**Concerns**

1. Asking for team leaders to repeat what station the call is for
2. Knowing where the inventory of equipment is (sockets, extensions, tooling, cables….) essential to reduce timing to fix tooling issues
3. Complaints of being on phone outside the tool room quite often
4. Lack of knowledge in Microsoft Office Programs – Excel, Word, and Power Point
5. Peers getting asked for help on same tasks that they state you were trained on.
6. Taking notes during on the job training and then being able to repeat the steps successfully
7. Not knowing you were responsible for covering all 3 shifts vacation leaves.
8. Proficiency to input and pull data from Crane Tooling System

9. Design of hand tools and fixtures
10. Set up a station from an AMPS/EBOM sheet from I.E.
11. Cost estimation for tooling and fixtures
12. Taking time to learn more while idle in tool room
13. Going through the MQGR 64 activities required from Tool Process Engineering
14. Submitting Vacation dates on Calendar with TPE's already on same dates

*Id.* at 215. Plaintiff testified he had never seen this email. *Id.* at 125. Plaintiff testified, however, that he had a conversation with DeVries when he was going to be removed from the process engineer position. *Id.* He testified DeVries told him he was "not getting out to the floor on time," but DeVries would not identify who told him that. *Id.* at 125-26. He also testified DeVries cited his asking of questions as a reason for his termination. *Id.* at 127-28. Plaintiff learned from Mark Garrett and DeVries that he was going to be removed from the process engineer position and returned to his previous millwright position. *Id.* at 128-29. This resulted in decreased pay. *Id.* at 137-38.

Plaintiff returned to the millwright position around May 1, 2023. *Id.* at 132. He did not know if Defendant filled the float process engineer position. *Id.* at 136. In response to an interrogatory, Defendant stated that "Plaintiff's float role as a Process Engineer, which was created to accommodate him on a trial basis, was not back-filled after he returned to a Millwright role in May 2023." (Doc. 24-1, at 6).

Plaintiff "felt from [his] treatment as a whole" the decision to move him back to the millwright position was based on race. (Doc. 18-1, at 135). Neither DeVries nor Dorobek ever made comments about Plaintiff's race. *Id.* He similarly believed his age to be the basis for his removal from that position because he "was older than everybody else that [he] was working with" and he "just felt it was an age gap . . . because [he] was basically about 10 to 15 years older than all of [his] co-workers." *Id.* at 135-36. Neither Dorobek, DeVries, nor any of Plaintiff's other coworkers ever made age-based comments to him. *Id.* at 136.

On November 22, 2023, Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC"). *Id.* at 145; *see also id.* at 219 (OCRC Charge). Therein, Plaintiff identified race and age discrimination and cited his treatment in the facility engineer position, his termination from the facility engineer position, racial harassment, and his demotion to millwright. *See id.* at 219.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257; *see also* Fed. R. Civ. P. 56(c)(1). Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine dispute of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Plaintiff brings claims of: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 27 U.S.C. § 621, *et seq*., and the Ohio Civil Rights Act ("OCRA"), Ohio Revised Code § 4112.02, *et seq*.; and (2) race discrimination under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq*., and the OCRA. In its Motion, Defendant argues the state law claims are time barred, some of the federal claims are time barred, and Plaintiff cannot demonstrate an issue of fact regarding the remaining federal claims. For the reasons discussed below, the Court grants Defendant's Motion.

<u>Federal Claims</u>

*Statute of Limitations*

In his first and third claims for relief, Plaintiff asserts violations of the ADEA and Title VII. (Doc. 1, at 4-5, 7-8). He bases these claims factually on his treatment while in the facility engineer position in 2022, his termination from that position in September of 2022, his treatment while in the process engineer position, and his March 2023 demotion from the process engineer position to millwright. *See id.* Defendant argues Plaintiff's federal claims of discrimination are limited to his demotion back to his former millwright position effective May 1, 2023, and his alleged harassment while working as a process engineer from January 26, 2023, onward. (Doc. 22, at 15-16). This is so, Defendant contends, because Plaintiff's assertions of other discriminatory acts are time-barred by the 300-day limitations period for filing an administrative charge. *Id.* Plaintiff concedes this point. *See* Doc. 24, at 10 ("As to the Federal Claims asserted in this action, Plaintiff agrees that the 300 day limitation for filing with the EEOC applies to limit his federal law based action to events after January 26, 2023."). The Court therefore only addresses Plaintiff's claims of discrimination that post-date January 26, 2023.

*Federal Discrimination Claims*

The only discriminatory acts Plaintiff cites after January 26, 2023, are his demotion to millwright and arguably a hostile work environment. Turning to the substance of these remaining claims, Defendant contends that, as to his demotion from process engineer to millwright, Plaintiff cannot establish a *prima facie* case of discrimination and, even if he could, he cannot demonstrate pretext. (Doc. 22, at 16-20). Defendant further argues that, to the extent Plaintiff asserts a separate hostile work environment claim, he has not presented evidence of severe and pervasive conduct constituting an abusive working environment. *Id.* at 20-21.

**Demotion to Millwright**

Title VII makes it an unlawful employment practice to "fail or refuse to hire or to discharge" an individual because of that person's race. 42 U.S.C. § 2000e–2(a)(1). Similarly, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "Generally, discrimination claims brought under Title VII and the ADEA are analyzed under the same framework." *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).

In the absence of direct evidence of discrimination, Title VII and ADEA cases proceed through the familiar *McDonnell Douglas* burden-shifting framework, in which a plaintiff bears the burden of setting forth a prima facie case of discrimination, the defendant articulates a legitimate nondiscriminatory reason for the challenged action, and the burden then shifts back to plaintiff to show that such reason is in fact a pretext for discrimination. *See Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 589-90 (6th Cir. 2014).

Prima Facie Case

To establish a *prima facie* case of discrimination under Title VII or the ADEA here, Plaintiff must show he: (1) is a member of a protected group; (2) was subjected to an adverse employment decision; (3) was qualified for the position; and (4) was replaced by someone outside of the protected class or similarly situated non-protected employees were treated more favorably. *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021). Defendant attacks Plaintiff's ability to satisfy the third or fourth prong of his *prima facie* case: whether he was qualified for the position and whether he was replaced.

*Prong 3: Qualification*

An employee can show that he is "qualified" by pointing to "credible evidence that his . . . qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) (en banc). Relevant objective indicia include "the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576.

Defendant, pointing to Plaintiff's testimony regarding the facility engineer position and DeVries's email identifying performance concerns, contends Plaintiff cannot show he was qualified for the position. *See* Doc. 22, at 16-18. Plaintiff responds that "it was Defendant's decision to move Plaintiff into the Process Engineer float position in the first place" and contends Defendant conflates qualification with its purported nondiscriminatory reason. (Doc. 24, at 11). To avoid conflating "the distinct stages of the *McDonnell Douglas* test," district courts must evaluate the qualification factor "independent of the employer's proffered nondiscriminatory reasons for discharge." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002); *see also Loyd*, 766 F.3d at 590 ("We have repeatedly cautioned district courts

against considering the employer's alleged nondiscriminatory reason when analyzing the prima facie case.") (citation modified). Thus, DeVries's email outlining performance concerns is not a proper basis for this Court to find Plaintiff not qualified. However, although Plaintiff implies that he was qualified for the process engineer position by virtue of the fact that Defendant placed him in it, he points to no specific evidence to demonstrate his qualifications. *See Spicer v. Harvard Maint., Inc.*, 2026 WL 1196022, at *3 (6th Cir.) ("[I]n the district court, Spicer cited no evidence about her qualifications. So she necessarily failed her burden."). At best, Plaintiff contends that "DeVries and Dorobek had told him that he was doing a good job." (Doc. 24, at 11); *see also* Doc. 18-1, at 116-17. The Court ultimately need not resolve whether this is sufficient to establish a question of fact regarding Plaintiff's qualification for the process engineer position because, as set forth below, he cannot establish the fourth prong of a prima facie case, or pretext.

*Prong 4: Replacement / Differential Treatment*

Even assuming Plaintiff had demonstrated the third prong of his *prima facie* case, the Court agrees with Defendant that Plaintiff has not pointed the Court to evidence supporting the fourth prong.

To establish the fourth prong of his prima face case of race or age discrimination, Plaintiff must establish that: (1) he was replaced by someone outside the protected class, or (2) he was treated differently than a similarly situated, non-protected employee. *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).

Defendant contends Plaintiff has not identified that he was replaced, nor has he identified any employees, let alone similarly situated employees, who were treated more favorably as to the process engineer position. (Doc. 22, at 18). Plaintiff contends that the *prima facie* case is flexible and discrimination "involves a mosaic of circumstantial evidence" and "failure to produce a

comparator does not necessarily doom a case." (Doc. 24, at 12).[3] He then contends Defendant "did not backfill Plaintiff's process engineering position after it returned him to the millwright position" and Plaintiff's "return to the millwright position permitted the retention of younger white employees in the Assembly department." *Id.* at 12-13. He argues, even though the position was not filled, "any work that he performed was continued after he departed by significantly younger white employees. *Id.* at 13. However, the Sixth Circuit has explained that "[a] person is considered replaced only when another employee is hired or reassigned to perform the plaintiff's duties. A person is not considered replaced when his duties are absorbed by another person or when the work is redistributed among other existing employees already performing related work." *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009) (citation modified). Although Plaintiff contends all the circumstances taken together can show differential treatment, the Court finds his evidence falls short of creating a genuine issue of material fact. Nevertheless, even if it could, Defendant would still be entitled to summary judgment as set forth below.

<u>Legitimate Nondiscriminatory Reason</u>

Assuming Plaintiff could establish a *prima facie* case, the burden of production shifts to Defendant to articulate a legitimate nondiscriminatory reason for its actions. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814-15 (6th Cir. 2011) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 248, 254 (1981)). [Defendant's] burden is merely one of production, not persuasion." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). The reason must be " clear and reasonably specific" and supported by "admissible evidence which would

---

3. Plaintiff also argues that he "identified that he was replaced by Jason Gaetz, a significantly younger white [male] after his first removal from facility engineer and corresponding transfer to the process engineer float position." (Doc. 24, at 11). But Plaintiff's removal from the facility engineer position is not presently at issue by operation of the statute of limitations as explained below.

allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257-58.

Defendant has done so here. Defendant offers DeVries's e-mail describing performance issues. *See* Doc. 22, at 19; Doc. 18-1, at 215 (DeVries email citing performance "[c]oncerns"); *see also* Doc. 18-1, at 125-28 (Plaintiff's testimony regarding limited performance concerns expressed to him). Poor performance is a permitted non-discriminatory reason. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008).

Pretext

Once an employer articulates a legitimate nondiscriminatory reason for the adverse employment action, the burden shifts to Plaintiff to establish the stated reason was pretext for discrimination. *Land v. S. States Coop., Inc.*, 740 F. App'x 845, 849 (6th Cir. 2018). The Court agrees with Defendant that Plaintiff has not pointed to evidence to create a genuine dispute of fact regarding pretext. (Doc. 22, at 19-20).

Pretext "is a commonsense inquiry: did the employer fire [or here, demote] the employee for the stated reason or not?" *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Plaintiffs "typically show pretext in one of three ways:" with evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action." *Id.* (quoting *Chen*, 580 F.3d at 400). But those categories are not exhaustive, so a plaintiff "may also demonstrate pretext by offering" any other "evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Babb v. Maryville*

*Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir. 2019) (quoting *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009)). However, when doing so, "a plaintiff must articulate some cognizable explanation of how the evidence [he] has put forth establishes pretext." *Miles*, 946 F.3d at 888.

Defendant contends Plaintiff cannot point to evidence to establish a genuine dispute regarding pretext. (Doc. 22, at 19-20). Specifically, it argues Plaintiff's disagreement with Defendant's assessment of his performance cannot show pretext and that he has pointed to no evidence suggesting Defendant's actions were actually taken because of his race or age. *Id.* In response, Plaintiff argues only: "No significant reasons were given to Plaintiff to support the demotion [from] process engineer to millwright per Plaintiff's testimony and he testified he was given assurances that he was doing a good job." (Doc. 24, at 13).

To show that an employer's stated justification has no basis in fact, the employee must show that "the employer's allegations never happened." *Miles*, 946 F.3d at 888-89. The "question is always whether the employer made up its stated reason to conceal intentional discrimination." *Pelcha*, 988 F.3d at 326-27 (quoting *Chen*, 580 F.3d at 400 n.4). Although Plaintiff may have presented a factual dispute regarding the negative assessments of his performance or whether those assessments were fully communicated to him, "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons." *Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006) (quoting *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996)). At base, Plaintiff points to no evidence from which a reasonable jury could find that Defendant's proffered reason – his performance – was not the real reason for his demotion from process engineer to millwright, and that such reason

was a mere pretext for discrimination based on his age or race. He testified only to a "gut feel" that this action was discriminatory because he was the only person of color working in his department, and because he was older. *Id.* at 80-82. Plaintiff's own "'conclusory allegations and subjective beliefs' are simply not enough to establish pretext." *Smith v. City of Toledo*, 13 F.4th 508, 519 (6th Cir. 2021) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)). Thus, Defendant is entitled to summary judgment.

Hostile Work Environment

In his Complaint, Plaintiff did not expressly bring a separate claim for hostile work environment. *See* Doc. 1. Nevertheless, the Complaint references "employment harassment" and "being "isolated, shamed and treated with blatant racism." *Id.* at 5-6. As it relates to the post-January 2023 evidence, Plaintiff testified that the racial harassment he referenced in his EEOC charge stemmed from Dorobek. (Doc. 18-1, at 150). Defendant argues to the extent Plaintiff brings a hostile work environment claim, it is entitled to summary judgment thereon. (Doc. 22, at 20-21).

To establish a *prima facie* hostile-work-environment claim, Plaintiff must demonstrate: (1) he is a member of a protected group, (2) he was subject to unwelcome harassment, (3) the harassment was based on his membership in a protected class, (4) the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (5) Defendant "knew or should have known about the harassment and failed to act." *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 565 (6th Cir. 2021) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013). To establish the severe-or-pervasive factor, an individual must identify conduct that is "severe *or* pervasive" enough "to alter the conditions of [their] employment and create an abusive working

environment." *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 377 (6th Cir. 2026) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Conduct that is 'merely offensive' will not suffice to support a hostile work environment action." *May v. GMC Mansfield Metal Fabricating*, 61 F. App'x 171, 173 (6th Cir. 2003) (quoting *Harris*, 510 U.S. at 21).

The Court agrees with Defendant that Plaintiff has not pointed to facts creating a triable issue of whether "severe or pervasive" harassment occurred or whether any such treatment was based on his race or age as it relates to any post-January 2023 claims. Although Plaintiff testified Dorobek was "short" with him, "difficult to get along and work with," and "challenging to work with," he further testified that Dorobek never made any comments regarding his race or age. (Doc. 18-1, at 116, 118, 135-36). Moreover, Plaintiff presents no response to Defendant's hostile work environment argument and, as a result, has forfeited any such argument. *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) ("When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited.").

<u>State Law Claims</u>

In his second and fourth claims for relief, Plaintiff brings claims for age and race discrimination under Ohio Revised Code § 4112.02(A). *See* Doc. 1, at 5, 8. In its Motion, Defendant attacks these claims as barred based on the 180-day statute of limitations in Plaintiff's employment application. (Doc. 22, at 14-15). It further notes, in its argument that it is entitled to summary judgment on Plaintiff's federal claims (which again, as above, limited to arguments about allegations of discrimination after January 26, 2023), that his "time-barred state law claims would fail on their merits for the same reasons articulated in this section" regarding his federal discrimination claims. *Id.* at 16 n.2. This is true as far as the post-January 2023 claims. *See Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 760 (6th Cir. 2008); *see also Russell v. Univ. of*

*Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (Title VII and O.R.C. § 4112 racial discrimination claims can be analyzed together because "Ohio's requirements are the same as under federal law.") (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003)). And the Court therefore finds, consistent with the above analysis, Defendant is also entitled to summary judgment on Plaintiff's state law discrimination claims that post-date January 26, 2023. However, that argument and analysis does not encompass Plaintiff's treatment while in the facility engineer position in 2022, his termination from that position in September of 2022, his treatment while in the process engineer position prior to January 26, 2023, because Defendant argued (and Plaintiff agreed) those claims are barred by the 300-day EEOC limitations period. That is, the only argument Defendant presented in its opening brief directed at Plaintiff's pre-January 26, 2023, discrimination claims is the statute of limitations bar.[4]

It is undisputed Plaintiff signed an employment application containing a 180-day statute of limitations. *See* Doc. 18-1, at 187 (employment application); *id.* at 29-30. All actions Plaintiff cites as discriminatory occurred on or before May 1, 2023. *See* Doc. 1, at 3-9. One hundred eighty days after this date is October 28, 2023. Plaintiff took no formal action prior to this date, as he filed his OCRC discrimination charge on November 22, 2023. (Doc. 18-1, at 219); *see also id.* at 145.

Ohio courts have previously upheld contractual statute of limitations periods in employment discrimination cases. *See, e.g.*, *Fayak v. Univ. Hosps.*, 2020 WL 7062683, at *5

4. In Reply, Defendant belatedly contends that even if not time-barred "the claims must be dismissed because they fail on their merits for the same reasons his claims related to his demotion to millwright fail, consistent with the record evidence identified in [Defendant's] Statement of Material Facts" and asserts Plaintiff cannot show discriminatory intent. (Doc. 26, at 4). But the Court agrees with Plaintiff that Defendant did not raise such an argument in its original Motion, but only attacked the earlier state law claims as barred by the statute of limitations. *See* Doc. 24, at 10.

(Ohio Ct. App.) ("Ohio courts have applied shortened contractual limitations periods to employment discrimination claims. Further, courts in other jurisdictions have held that a six-month limitations period within an employment application is not unreasonable or against public policy under state law. Likewise, we find that the six-month limitations period in Fayak's employment application is reasonable and enforceable under Ohio law.") (citations omitted). One of the cases cited by *Fayak* for this proposition is the Sixth Circuit's opinion in *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357 (6th Cir. 2004). In that case, applying Michigan law, the court explained that a limitations period "is reasonable if (1) the claimant has sufficient opportunity to investigate and file an action; (2) the time is not so short as to work a practical abrogation of the right of action; and (3) the action is not barred before the loss or damage can be ascertained." *Id.* (citation modified).

So too has the Sixth Circuit upheld shortened limitations periods under Ohio law. *See Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521 (6th Cir. 2021) ("[F]ederal courts have upheld contractual limitations periods on employment-discrimination claims brought under Ohio law, and we find no reason not to do so here."); *see also Thompson v. Fresh Prods., LLC*, 2019 WL 13078700, at *2 (N.D. Ohio) ("[B]ecause the six-month limitation period is reasonable, the contractual limitation is enforceable."); *Terry v. Cent. Transp., Inc.*, 2011 WL 3296852, at *4-5 (N.D. Ohio) (finding "nothing inherently unreasonable about a six-month limitation period" and that the plaintiff "has made no showing as to why it might have been specifically unreasonable in the present case" and noting the plaintiff "pointed to no controlling statute which limits the ability of the parties in this case to contract for a shorter limitations period").

Plaintiff resists the application of the same analysis here, arguing subsequent revisions to Ohio law in 2021 that shortened the statutory limitations period and now require a plaintiff to

first pursue charges before the OCRC before filing in court should alter the analysis. (Doc. 24, at 9-10). He contends "[t]his amendment encourages pre suit administrative investigation and settlement attempts and a shortened limitations period of 180 days would interfere with this legislated process" and notes Ohio courts have not addressed a contractually shortened limitations period after these statutory amendments. *Id.* Plaintiff further asserts that in light of these amendments, the 180-day contractual limitations period is "unreasonably short." *Id.* at 10.

As one Ohio appellate court explained the change in the law:

> Effective April 15, 2021, Ohio Revised Code Chapter 4112 was amended by the passage of the Employment Law Uniformity Act (hereinafter "ELUA") under H.B. 352. The ELUA amended certain portions of Chapter 4112, including imposing a two-year statute of limitations for employment discrimination claims, [and] a requirement to exhaust administrative remedies existing under Ohio law if a claim is brought under R.C. 4112.02.

*Burch v. Ohio Farmers Ins. Co.*, 211 N.E.3d 202, 203–04 (Ohio Ct. App. 2023); *see also* Ohio Rev. Code § 4112.052(B)-(C). Prior to the ELUA's enactment, and when the previous cases regarding contractually-shortened limitations periods were decided, the statute of limitations for such claims was the state's general six year statute of limitations. *See Elba v. Mac's Convenience Stores, LLC*, 2025 WL 2645502, at *12 (S.D. Ohio) (citing *Cosgrove v. Williamsburg of Cincinnati Mgmt. Co.*, 638 N.E.2d 991 (Ohio 1994)); *see also Thompson*, 985 F.3d at 521.

The disputed question is thus, what, if any, effect does the ELUA's shortened statutory limitations period and administrative exhaustion requirement have on the reasonableness of a contractually-shortened limitations period? No Ohio Court has yet addressed this issue.

"In construing questions of state law, the federal court must apply state law in accordance with the controlling decisions of the highest court of the state." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64

(1938)). "If the state's highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue." *Id.*

Parties may agree to a limitations period shorter than that provided by state law. *See, e.g.*, *Missouri, Kan. & Tex. Ry. Co. v. Harriman Bros.*, 227 U.S. 657, 673 (1913). The general rule has been stated:

> in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.

*Order of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947).

"The Ohio Supreme Court has recognized that parties may agree to a limitation on the time within which an action may be initiated where the applicable statute of limitations provides a longer period." *Conte v. Blossom Homes, L.L.C.*, 63 N.E.3d 1245, 1254 (Ohio Ct. App. 2016). "However, such a contractual limitations period is valid only if the time provision is unambiguous, is for a reasonable period, and is not in violation of public policy." *Id.*

Ohio courts "presume that the General Assembly knows the state of the common law when it enacts legislation." *Ames v. Rootstown Twp. Bd. of Tr.*, 221 N.E.3d 793, 799 (Ohio 2022). And "[i]t is well settled that 'the [G]eneral [A]ssembly will not be presumed to have intended to abrogate a settled rule of the common law unless the language used in a statute clearly supports such intention.'" *Cunningham v. Testa*, 40 N.E.3d 1096, 1100 (Ohio 2015) (quoting *Mandelbaum v. Mandelbaum*, 905 N.E.2d 172, 178 (Ohio 2009)). As set forth above, Ohio courts have recognized parties can contractually shorten a limitations period, and have extended that rule to employment claims. "Statutes are to be read and construed with reference to the principles of the common law and are not to be presumed to have intended a repeal of the settled rule of the common law unless the language employed clearly expresses or imports such

intention." *Frantz v. Maher*, 155 N.E.2d 471, 471 (Ohio Ct. App. 1957). If the General Assembly intends to abrogate common-law rules, such intention must be "manifested by express language." *Id.* at 471-72. "There is no repeal of the common law by mere implication." *Id.* at 472.

Here, the common law at the time the ELUA was enacted permitted contractually-shortened limitations periods in the employment context. There is no "express language" in the ELUA abrogating that rule, despite the addition of a shortened statute of limitations and the requirement of administrative exhaustion. There is no "controlling statute to the contrary" suggesting the ELUA's new statute of limitations cannot be shortened by contract. *Order of United Com. Travelers of Am.*, 331 U.S. at 608.

Additionally, in the context of evaluating whether an arbitration agreement containing a one-year statute of limitations that covered employment discrimination claims was substantively unconscionable, an Ohio appellate court recently explained that "[a] one-year window is not so short as to deprive an employee of a reasonable opportunity to discover, investigate, and assert an employment claim." *Kushan v. King David Acute Nursing & Rehab. LLC*, 2026 WL 2056887, at *5 (Ohio Ct. App.). In holding the arbitration agreement was not unconscionable, the court explained:

> Appellants' contention that the agreement deprives them of substantive rights conflates the forum in which a claim is heard with the substantive law applied to it. An arbitration agreement does not extinguish statutory claims; it merely provides an alternative forum for their resolution. The agreement here expressly covers, rather than waives, statutory employment claims, and *nothing in its terms purports to limit the substantive remedies available under R.C. Ch. 4112* or R.C. 3721.24.

*Kushan*, 2026 WL 2056887, at *6 (emphasis added). This suggests that Ohio courts do not consider the statute of limitations in the ELUA to be a substantive right. *Cf. Logan v. MGM*

*Grand Detroit Casino*, 939 F.3d 824, 828-29 (6th Cir. 2019) (finding that Title VII's statute of limitations is a substantive right).

Finally, Plaintiff presents no argument that the six month limitations period was specifically unreasonable here such that he could not have investigated and filed such an action within the relevant time period or that six months is so short as to abrogate the right.[5]

The Court therefore finds Plaintiff's state law discrimination claims that predate January 26, 2023, barred by the six month contractual limitations period in the application for employment.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 22) be, and the same hereby is, GRANTED.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: September 4, 2026

5. The Court observes that the ELUA contains a provision under which the "time period to file a civil action" is tolled while the claim is pending with the Ohio Civil Rights Commission. Ohio Rev. Code § 4112.052(C)(2). It is possible that filling an administrative complaint may well toll any statute of limitations, including a contractually-shortened one, as such exhaustion is now a required prerequisite to filing suit. But even assuming this is so, Plaintiff here did not even file his OCRC complaint until *after* the contract's statute of limitations had expired.